UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

E. B. P.V.,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondents.

Case No. C26-3711-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION

Petitioner E.B.P.V., who is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action through counsel seeking release from detention. Dkt. 1. Respondents filed a return to the petition, Dkt. 5, together with supporting declarations, Dkts. 6-7, and Petitioner filed a reply, Dkt. 7. Now, having considered the parties' submissions and the governing law, the Court GRANTS the petition in part, ORDERS that Petitioner be released from detention within twenty-four (24) hours, and GRANTS additional relief as discussed below.

## II. BACKGROUND

Petitioner is a native and citizen of Guatemala. Dkt. 6, ¶ 4. On August 29, 2024, she entered the United States with two of her minor children, J.J.V.P. and P.V.P., at or near Chula

Vista, California, and encountered United States Border Patrol (USBP). Dkt. 1, ¶ 28 & Ex. B; Dkt. 6, ¶¶ 4-5. On the same day, USBP served Petitioner with a Notice to Appear (NTA), charging her as removable under Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), released her on an Order of Recognizance (OREC), and enrolled her in the Alternatives to Detention Program (ADP). Dkt. 6, ¶¶ 5-6; Dkt. 7, Exs. 1-2.

Petitioner thereafter actively participated in removal proceedings initiated by the Government, including reporting to ICE's Seattle Office and its Intensive Supervision Appearance Program (ISAP) contractor, and attending her immigration hearings. Dkt. 1, ¶¶ 2, 31-32. In a master calendar hearing before the Seattle Immigration Court on December 5, 2024, Petitioner and her sons admitted the factual allegations, conceded removability, and Guatemala was designated as the country of removal. *Id.*, ¶ 32. Petitioner also, on January 21, 2025, filed an Application for Asylum, Withholding of Removal, and Protection under the Convention Against Torture (CAT) that included J.J.V.P. and P.V.P. *Id.*, ¶ 33.

On July 16, 2025, Petitioner gave birth to her son B.A.V.P., a United States citizen, at Mason General Hospital in Washington. *Id.*, ¶ 35 & Ex. B. Petitioner has breastfed her son since his birth. *Id.*

Petitioner's individual calendar hearing before the Seattle Immigration Court began on April 9, 2026, but was continued. *Id.*, ¶ 36. She appeared for a continued hearing on August 13, 2026, but the hearing was reset for February 25, 2027, after an interpreter failed to appear. *Id.*

On September 11, 2026, Petitioner reported as directed to the Seattle ISAP office. *Id.*, ¶ 43; Dkt. 7-3 at 4. ICE officers advised Petitioner she had fifteen ATD violations, dated between August 31, 2024, and August 25, 2026, arrested and detained her, and transferred her to the NWIPC. Dkt. 1, ¶ 44; Dkt. 6, ¶¶ 7-26. On September 12, 2026, ICE Enforcement and Removal

Operations (ERO) filed an address update with the immigration court so that Petitioner's immigration case could be moved to the Tacoma Immigration Court. Dkt. 6, ¶ 27.

Petitioner disputes the accuracy of Respondents' contention regarding ATD violations. She asserts that, to the best of her knowledge, she missed only two check-in reporting events. Dkt. 1, ¶ 37 & Ex. B. First, she missed a check-in because she was receiving emergency medical care, notified ICE, and secured a letter from her physician. *Id*. Second, she missed a check-in on the day of her April 9, 2026, calendar hearing because the check-in office had closed by the time the hearing adjourned. *Id*.; *accord id*., Ex. C, ¶ 5. Petitioner occasionally had difficulty sending photographs through her ATD smartphone application, but believes they were submitted, and neither Petitioner, nor her representative were ever advised of any problems with her check-ins or ATD requirements. *Id*., ¶¶ 40-41, Ex. B, & Ex. C, ¶¶ 2-7.

Petitioner has no criminal history. *Id*., ¶ 53; Dkt. 7-2 at 5. She has been unable to breastfeed B.A.V.P. since her re-detention on September 11, 2026, and has suffered painful medical conditions and depression as a result. Dkt. 1, ¶ 54 & Ex. B. The separation has placed undue strain on B.A.V.P. and family members trying to care for him. *Id*. Petitioner's detention also disrupted her family's asylum case, with her immigration case now pending in Tacoma, and her sons' cases remaining in Seattle and with an upcoming hearing on February 25, 2027. *Id*., ¶ 55 & Ex. C, ¶ 7.

Petitioner filed her habeas petition in this Court on October 1, 2026. *See* Dkt. 1. She thereafter requested a bond hearing and in a hearing on October 19, 2026, the immigration judge entered a checkbox order finding "No jurisdiction" and "Mandatory Detention Under Matter of M-S & Matter of Q. Li; 235(b)(1) and 235(b)(2)[.]" Dkt. 8 at 9 & Ex. D. The order makes no danger to the community or flight risk findings, and indicates Petitioner reserved appeal. *See id.*

## III. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," and may dispose of habeas matters "as law and justice require." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); 28 U.S.C. § 2243.

## IV. DISCUSSION

Petitioner asserts that, under *Mathews v. Eldridge*, 424 U.S. 319 (1976), Respondents violated her Fifth Amendment right to due process by re-detaining her without pre-deprivation process. Dkt. 1. She also asserts her detention violates the *Accardi* doctrine, *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), and 5 U.S.C. § 706(2)(A) because it was in disregard of ICE Directive 11032.4. *See* Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals, U.S. Immigr. & Customs Enf't, Directive 11032.4 (July 1, 2021) (". . . ICE should not detain, arrest, or take into custody for an administrative violation of the immigration laws individuals known to be pregnant, postpartum, or nursing unless release is prohibited by law or exceptional circumstances exist.") (found at https://www.ice.gov/doclib/foia/policy/directive11032.4.pdf) (last viewed November 4, 2026). She seeks release from detention and declaratory and injunctive relief. *See* Dkt. 1 at 34-35.

Respondents do not engage in a *Mathews* analysis or address ICE Directive 11032.4 or any other requests for relief. *See* Dkt. 5. They contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and that her re-detention was lawful. They acknowledge courts in this District, including this Court, have rejected their mandatory detention

argument and found a due process violation when an individual is re-detained on an OREC without any pre-deprivation process. They rest their response on their contention Petitioner is subject to mandatory detention and on arguments addressed in *Alfaro Siguenza v. Hernandez*, No. C26-2670-SKV, 2026 WL 2587980 (W.D. Wash. Aug. 27, 2026). *See id*. at 5-6.

This Court has repeatedly rejected Respondents' argument regarding mandatory detention and does so again here. *See, e.g., Ibrahim v. Mullin*, No. C26-1467-SKV, 2026 WL 1487736, at *5 (W.D. Wash. May 28, 2026); *Caiza Aucatoma v. Hernandez*, No. C26-1253-SKV, 2026 WL 1265541, at *5-6 (W.D. Wash. May 8, 2026). The Court, as such, limits its consideration to Petitioner's due process claim and other requests for relief.

A. <u>Due Process</u>

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id*. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).

In *Mathews*, 424 U.S. at 335, the Supreme Court established a three-part test for determining whether a particular government action comports with due process, balancing: (1) the private interest affected; (2) the risk of an erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest,

including fiscal and administrative burdens. Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211 (9th Cir. 2022); *E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). The Court therefore applies the *Mathews* test to Petitioner's claim.

First, Petitioner had a liberty interest in her continued freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. When Petitioner was released shortly after entering the United States, she acquired a liberty interest protected by the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). Respondents do not suggest otherwise. This factor favors Petitioner.

Second, there was a high risk of erroneous deprivation and value in additional safeguards. It is undisputed Petitioner was re-detained without process. *See generally* Dkts. 5-7. When Petitioner was released into the United States, the Government necessarily first determined she posed neither a danger to the community, nor a flight risk. *See* 8 C.F.R. § 236.1(c)(8). To then unilaterally revoke that release, without providing any individualized, pre-deprivation process to determine whether Petitioner now poses a risk, came with a high risk of error. *See Alfaro Siguenza*, 2026 WL 2587980, at *4 (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1323); *see also Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1202-03 (W.D. Wash. 2025).

Respondents appear to point to evidence of an alleged fifteen ATD violations as supporting Petitioner's re-detention without pre-deprivation process. *See Alfaro Siguenza*, 2026

WL 2587980, at *3 (noting Respondents' argument that a reliance on alleged OREC violations supported a finding of "'substantial adherence to the [G]overnment's procedures' and therefore 'mitigated the risk of erroneous deprivation.'") (citations omitted). However, any such argument fails for the same reasons identified in *Alfaro Siguenza*. That is, Respondents do not contend and nothing in the record suggests the re-detention decision involved consideration of danger to the community or flight risk; it appears the decision rested solely on alleged ATD violations that Petitioner either disputes or explains, *see* Dkt. 1, ¶¶ 37, 40-41, Ex. B, & Ex. C, ¶¶ 2-7; Respondents do not acknowledge or address Petitioner's assertions; and nothing in the record suggests Respondents sought to further adjudicate or ascertain the accuracy of any alleged noncompliance after she was re-detained. *See Alfaro Siguenza*, 2026 WL 2587980, at *4. As such, the circumstances of Petitioner's arrest and re-detention "based solely on alleged but unproven and disputed [ATD violations] show there was a high risk of erroneous deprivation and that additional, pre-deprivation process would have been valuable in ensuring such error did not occur." *Id*. Notice and a pre-deprivation hearing would have provided Petitioner the opportunity to challenge the factual bases for her re-detention. The second *Mathews* factor thus weighs in Petitioner's favor.

Respondents, finally, do not here identify any governmental interest, and the Court declines to identify one for them. Regardless, the Government's interests would not have been hindered by providing Petitioner with individualized pre-deprivation process. The third *Mathews* factor therefore favors Petitioner as well.

In sum, all three *Mathews* factors weigh in Petitioner's favor. Petitioner's re-detention without any pre-deprivation process violated her right to due process. Petitioner is therefore entitled to habeas relief under § 2241 and must be released from custody.

B. Other Claims and Requests for Relief

Because the Court finds Petitioner entitled to habeas relief for the reasons discussed above, it need not and does not address the cause of action alleging violation of the *Accardi* doctrine and 5 U.S.C. § 706(2)(A), or the associated request for declaratory relief. *See* Dkt. 1 at 33-34. The Court does, however, consider her request for an injunction prohibiting her re-detention absent pre-deprivation process, the placement of an electronic GPS monitoring device, or other more restrictive conditions of release, as well as her request for an order directing the return of her personal property. *See id.* at 28-29, 32, 35; Dkt. 8 at 26-29.

A petitioner seeking permanent injunctive relief must show

> (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Petitioner is the mother of three small children, and was nursing her youngest child at the time she was re-detained unlawfully and in contravention of ICE Directive 11032.4. *See* Dkt. 1, ¶ 35 & Ex. B; Directive 11032.4, *supra* (". . . ICE should not detain, arrest, or take into custody for an administrative violation of the immigration laws individuals known to be pregnant, postpartum, or nursing unless release is prohibited by law or exceptional circumstances exist."). Her inability to breastfeed her son caused her to suffer painful medical conditions and depression, and placed undue strain on her son and family members. Dkt. 1, ¶ 54 & Ex. B.

Petitioner here shows she suffered irreparable injuries – unlawful detention and violation of her due process rights and separation from her nursing child and resulting medical harm – for which monetary damages are unavailable or inadequate to compensate her. *See Leiva-Perez v.*

*Holder*, 640 F.3d 962, 969-70 (9th Cir. 2011) ("[O]ther important irreparable harm factors include separation from family members, medical needs, and potential economic hardship.") (cleaned up and quoting *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (en banc)); *Ortiz v. Hermosillo*, No. C26-0384-TL, 2026 WL 607672, at *6 (W.D. Wash. Mar. 4, 2026) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)).

The Court also finds the balance of hardships to favor Petitioner, as the requested injunction "requires only that Respondents comply with the Constitution before re-detaining [her]." *Saley v. Scott*, No. C26-0797-JNW, 2026 WL 914810, at *5 (W.D. Wash. Apr. 3, 2026). Finally, "the public interest is served by an order prohibiting Respondents from violating the Due Process Clause." *Id.*

Petitioner, in sum, satisfies the requirements for a permanent injunction and faces an ongoing likelihood of irreparable harm. *See, e.g., O.A.B.R. v. Hernandez*, No. C26-3527-TMC, slip op. at 8-9 (W.D. Wash. Oct. 13, 2026) ("As other [courts] in this District have observed, Respondents have demonstrated an intent to continue their practices no matter how many federal district courts conclude that those practices violate the law. Petitioner thus faces an ongoing likelihood of irreparable harm.") (internal citation omitted). Accordingly, absent circumstances urgently requiring arrest, the Court prohibits Respondents from re-detaining Petitioner as described below. *See id.* at 9 (citations omitted).

Petitioner does not, on the other hand, provide any factual support showing she bears individual risk of being fitted with a GPS monitor or not receiving her personal property on her release. *See* Dkts. 1 & 8. The Court therefore declines to order relief in relation to those

requests. The Court otherwise, and as set forth below, finds Petitioner properly released on conditions in effect at the time of her re-detention.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. The petition for writ of habeas corpus, Dkt. 1, is GRANTED in part.
2. Petitioner shall be RELEASED from detention within **twenty-four (24) hours** under the conditions in effect at the time of her re-detention.
3. Respondents shall file a certification with the Court within **forty-eight (48) hours** that Petitioner has been released.
4. Petitioner's request for injunctive relief is GRANTED in part. Absent circumstances urgently requiring arrest or an administratively final order of removal, Respondents are ENJOINED from re-detaining Petitioner during the pendency of her removal proceedings absent written notice and a hearing before a neutral decisionmaker, at which the government bears the burden of proving by clear and convincing evidence dangerousness or risk of flight based on changed circumstances.
5. Petitioner's remaining requests for declaratory and injunctive relief are DENIED.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 4th day of November, 2026.

S. KATE VAUGHAN
United States Magistrate Judge